WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-17-01620-001-TUC-RCC (DTF) |
| Plaintiff, | **ORDER** |
| v. | |
| Roger Dale Godwin, | |
| Defendant. | |

Pending before the Court is Defendant Roger Dale Godwin's Motion to Amend Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(a)(i). (Doc. 113.)

### I.  Procedural and Factual History

Godwin was convicted on two counts; Count 1: Threats Against the President of the United States, in violation of 18 U.S.C. § 871(a), and Count 2: Mailing Threatening Communications, in violation of 18 U.S.C. § 876(c). (Doc. 67 at 1.) Godwin was sentenced to forty-eight months' imprisonment for Count 1 and forty-eight months' imprisonment for Count 2, to be served concurrently and consecutive to Godwin's prior sentence. (*Id.*)

While Godwin was serving a prior conviction in USP Tucson, he attempted to send a letter to then-United States Attorney General Loretta Lynch. (Doc. 61 at 3.) Enclosed in the letter was a white substance which the letter claimed was anthrax. (*Id.* at 3-4.) The letter also contained threats to Lynch and then-President of the United States Barack Obama. (*Id.* at 4.) The letter and its contents were discovered by a correctional officer, leading to the lockdown of USP Tucson while the letter was tested for chemical and biological agents.

(*Id.* at 3.)

## II. Motion for Compassionate Release

Godwin's original Motion for Compassionate Release was denied without prejudice on June 25th, 2021 because Godwin had been moved from USP Tucson to USP Terre Haute in Indiana, and had not yet exhausted all his administrative remedies. (Doc. 107.) Godwin filed a Motion to Amend Compassionate Release on January 18th, 2022. (Doc. 113.)

## III. Standard of Review

A court may grant a compassionate release motion reducing the term of imprisonment when the following three conditions are satisfied: (1) the defendant has fully exhausted all available administrative remedies; (2) there are "extraordinary and compelling reasons" that "warrant such a reduction"; and (3) "the factors set forth in section 3553(a)" support a reduction. 18 U.S.C. § 3582. A court may also consider whether "the defendant is not a danger to the safety of any other person or to the community . . . ." United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13(2).

## IV. Exhaustion of Remedies

Following the denial of Godwin's original motion for compassionate release in this Court, the defendant was moved to Terre Haute in Indiana. (Doc. 107.) Once there, Godwin filed an Inmate Request to Staff regarding a Compassionate Release/Reduction in Sentence, which was denied by the Complex Warden. (Doc. 113-1.) In filing this motion, Godwin has exhausted all available administrative remedies. (Doc. 115 at 2.)

## V. "Extraordinary and Compelling Circumstances"

A court may reduce the term of imprisonment for an inmate when there are "particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing." 28 C.F.R. § 571.60. According to the U.S. Sentencing Commission, an extraordinary and compelling circumstance may occur when the defendant has "a serious physical or medical condition… that substantially diminishes the ability for the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to

recover." U.S.S.G. § 1B1.13 cmt. 1(A)(ii)(I). Although the Ninth Circuit ruled that the applicable U.S.S.G. was not binding, its guidelines may still "inform a district court's discretion" as to whether an extraordinary and compelling reason exists. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).

Godwin asserts that his hypertension, asthma, blood clots, and smoking history provide an extraordinary and compelling reason that, in conjunction with the COVID-19 pandemic, would allow for an early release. (Doc. 113 at 3.) Godwin alleges that his asthma has not been properly treated at Terre Haute, as his inhaler has not worked. (*Id.*) Godwin further alleges that has not received treatment or medications when requested. (*Id.* at 4.) Finally, Godwin alleges that Terre Haute has not followed COVID-19 health protocols by having inmates reuse masks and not enforcing social distancing. (*Id.* at 1.)

Typically, the existence of COVID-19 on its own does not create an extraordinary and compelling reason that would support an early release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). However, hypertension, asthma, and a history of smoking have been found by the Centers of Disease Control and Prevention to be medical conditions that can increase the risk of complications from COVID-19. *See Science Brief: Evidence Used to Update the List of Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited July 20, 2022).

Nevertheless, Godwin's medical records show that he has received two shots of the Pfizer vaccine. (Doc. 113-9.) Although the science suggests that a vaccinated individual with preexisting conditions remains more vulnerable than a vaccinated individual without preexisting conditions, this Court has acknowledged that the vaccine "will presumably reduce the risk of serious complications from COVID-19 . . . ." *United States v. Ramirez*, No. CR-11-02322-001-TUC-RCC (JR), 2021 WL 5492542, at *2 (D. Ariz. Nov. 23, 2021). Additionally, documentation provided by Godwin shows that he has received medical care from Terre Haute and had medication prescribed for his asthma and hypertension. (Doc. 113-7.) Outside of the faulty inhaler, which can be replaced,

Godwin has failed to show that Terre Haute has been unable to control these conditions with medication. Considering these facts, Godwin has failed to show that he possesses an extraordinary and compelling circumstance supporting a reduction in his terms of imprisonment.

### VI. 3553(a) Factors

Had Godwin been able to show that there was an extraordinary and compelling circumstance that supported a reduction in the terms of imprisonment, he would still need to demonstrate that the factors discussed in 18 U.S.C. § 3553(a) also support a reduction. *See* 18 U.S.C. § 3582(a). Three notable factors to be considered are "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the purposes of sentencing"; and "the need to avoid unwarranted sentencing disparities among similarly situated defendants . . . ." *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013).

### i. Nature and Circumstances of the Offense and History of the Defendant

The serious nature and circumstances surrounding Godwin's offense weigh against early release. Godwin mailed a threatening communication to then-Attorney General Lynch and then-President Obama, with a white substance within that the communication claimed to be anthrax. (Doc. 61 at 3-4.) The Ninth Circuit has ruled that mailing threatening communications could be considered a crime of violence. *United States v. De La Fuente*, 353 F.3d 766, 771 (9th Cir. 2003).

The history of the defendant weighs against an early release as well. Godwin has lengthy criminal history, having been convicted of over ten felonies between 1999 and 2018. (*Id.* at 7-12.) In addition, Godwin is a repeat offender, having been convicted of mailing threatening communication twice years apart, once in 2013 and once in 2018. (*Id.* at 1, 12.) Finally, Godwin has been continuously incarcerated since 2008, having committed several felonies while in prison. (*Id.* at 9-12.) Godwin has not demonstrated that he is capable of following the law when given the opportunity, and so early release is unwarranted.

### ii. Purposes of Sentencing and Sentencing Disparities

The purposes of sentencing and the need to avoid creating sentencing disparities also weigh against an early release. Godwin has not yet served fifty percent of his four-year sentence. Granting an early release with over half of Godwin's sentence yet to be served would therefore not advance the purposes of his sentencing.

However, even if Godwin had served more than fifty percent of his sentence, an early release would still not be appropriate based on the sentencing disparities an early release would create. According to Godwin's presentence report, the guideline provisions range for the two convictions which Godwin plead guilty to was between 110 months and 137 months. (*Id.* at 27.) However, as a result of a plea agreement, Godwin was sentenced to concurrent forty-eight month sentences. (Doc. 67 at 1.) Were Godwin to be released early, it would create an even larger sentencing disparity when compared to similarly situated defendants.

### VII. Danger to the Community

An early release is also not supported because of the danger Godwin would pose a danger to the community. This danger is not limited solely to physical danger but may also "encompass pecuniary or economic harm." *See United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992). Were Godwin to mail threatening communications for a third time, it would result in economic loss to the community. As a result of the discovery of the communication, Tucson's Police and Fire Departments spent numerous resources responding to the threat. (Doc. 61 at 3.) This factor also weighs against release.

### VIII. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that

(1) Defendant's Motion to Amend Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Doc. 113) is **DENIED**.

Dated this 1st day of August, 2022.

Honorable Raner C. Collins
Senior United States District Judge